■ Louise F. Eldredge et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v Edward I. Koch, as Mayor of the City of New York, et al., Appellants. — Order, Supreme Court, New York County (Arnold Guy Fraiman, J.), entered March 4, 1983, which granted plaintiffs partial summary judgment and injunctive relief, reversed, on the law, without costs, and the motion for summary judgment denied. This action, brought on behalf of a class defined as "homeless women living in New York City", alleges that the defendants have failed to provide members of the class adequate shelter facilities in violation of their constitutional and statutory rights. As here pertinent, the first cause of action alleges that the plaintiffs, and the class they claim to represent, have been denied equal protection of the law under the Federal and New York State Constitutions. Specifically it is alleged that the facilities provided by the defendants in shelters for homeless women fall short of the facilities agreed to be provided in shelters for homeless men in a consent decree entered into by city and State officials in *Callahan v Carey* (Supreme Ct, NY County, Index No. 42582/79), an action similar to the instant one, but brought on behalf of homeless men. Concluding that the existing women's shelters do not meet the standards set forth in the consent decree in *Callahan v Carey* in certain respects, Special Term granted plaintiffs' motion for partial summary judgment under the first cause of action to the extent of ordering additional facilities in two of the shelters presently available to homeless women and directing a limit in the capacity of the third shelter. Although we

of course agree with Special Term that homeless women are constitutionally entitled to treatment equal to that accorded to homeless men, we believe that the record discloses factual issues as to whether that right has been violated, and accordingly reverse the order appealed from and deny the motion for summary judgment. The *Callahan* decree set forth in its appendix A minimum space, shower and toilet facilities that were to apply as mandatory standards in newly constructed men's shelters. However, with regard to buildings converted from nonshelter to shelter use, paragraph 3(b) of the *Callahan* decree provided: "The standards set forth in Appendix A shall be used as guidelines in determining whether the planned capacity of the City defendants is reasonable." Since the three shelters for homeless women at issue here were converted from nonshelter use (a hospital, a day care center, and an armory), the standards set forth in appendix A of the *Callahan* decree would appear appropriately to be construed as guidelines to be considered at trial along with other relevant factors in determining the adequacy of the facilities provided in each shelter, and whether or not the facilities provided for homeless women, taken as a whole, are equal to those provided for homeless men. Concur — Kupferman, J. P., Sandler, Carro, Bloom and Lynch, JJ.